## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHRISTOPHER L. CLARK,**

      **Petitioner,**

**v.**                          **Case No. 8:18-cv-2670-MSS-AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## O R D E R

Before the Court is Christopher L. Clark's timely-filed *pro se* amended petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 7) Having considered the petition, the supporting memorandum (Doc. 8) and the response in opposition (Doc. 14),[1] and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the Court **ORDERS** that the petition is **DENIED**:

## BACKGROUND

The State of Florida charged Clark with one count of sexual battery of D.A., a minor; one count of lewd or lascivious molestation of D.A.; and one count of lewd or lascivious molestation of A.E., also a minor. (Doc. 15-1 Ex. 6) A state court jury convicted Clark of sexual battery on D.A. as charged, battery of D.A. as a lesser-

---

[1] Clark did not file a reply.

1

included offense of lewd or lascivious molestation, and lewd or lascivious molestation of A.E. as charged. (Doc. 15-2 Ex. 13) The trial court sentenced him to concurrent terms of life imprisonment on the count of sexual battery of D.A. and 30 years in prison on the count of lewd or lascivious molestation of A.E., and to time served on the count of battery of D.A. (Doc. 15-2 Ex. 15) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 15-2 Ex. 21)

Clark moved for postconviction relief under Florida Rule of Criminal Procedure 3.850, filing his initial motion as well as numerous amendments and memoranda and a reply to the State's response. (Doc. 15-3 Exs. 23-27, Doc. 15-4 Ex. 28, Doc. 15-6 Ex. 30, Doc. 15-9 Exs. 34, 35, Doc. 15-10 Ex. 45) The state postconviction court summarily denied some claims and denied the remaining claims after an evidentiary hearing. (Doc. 15-5 Ex. 29, Doc. 15-7 Ex. 32, Doc. 15-8 Ex. 32, Doc. 15-9 Ex. 38, Doc. 15-10 Ex. 44, Doc. 15-11 Ex. 47) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 15-12, Ex. 53)

## FACTUAL BACKGROUND AND TRIAL TESTIMONY[2]

The two victims, D.A. and A.E., were sisters. Their mother had a romantic relationship with Clark off and on for several years, during which they sometimes all lived together in Tampa. Over the course of the relationship, the girls saw domestic violence incidents between Clark and their mother, and Clark also used alcohol and drugs. Even after the final breakup of the romantic relationship in February 2005,

---

[2] The factual summary is based on the trial transcript and appellate briefs.

Clark would sometimes stay with the victims and their mother. At times, they all slept in the same bed.

In June 2005, when D.A. was 6 years old  and A.E. was 10 years old, they went on vacation with their mother while Clark stayed in Tampa. On the drive back to Tampa, D.A. said that she did not want to return to Clark's location. When her mother asked why, D.A. stated that Clark had touched her vagina, which she referred to as her "pee-pee," and had kissed her vagina when she told him that it hurt. The victim's mother did not react to D.A.'s statement because A.E. was also in the car; however, when A.E. overheard this conversation, A.E. said that Clark had touched her in her private area with his hand when they were lying in bed. The mother asked the victims why they had not come to her, and they said that Clark told them to keep it a secret. D.A. also stated that Clark had inserted his finger inside of her vagina.

Clark repeatedly called the victims' mother while she drove home. She told Clark that she was going to stop at a friend's house because it was raining. The victims' mother instead stopped at a family member's house and called the Hillsborough County Sheriff's Office. The victims' mother testified that Clark called her at some point after he was taken into custody and that he "just kept saying, 'I know it. I'm sorry, I'm sorry.' "

Deputy Ronald Barnes responded to the call on June 4, 2005. A.E. told Deputy Barnes that two weeks before the vacation, Clark had touched her vaginal area over her clothing when they were lying in bed and had also touched her vaginal area on

two other occasions. D.A. told Deputy Barnes that Clark had pulled her pants down and kissed vagina, and that Clark had inserted his finger into her vagina.

Clark was arrested on an outstanding warrant for an unrelated domestic violence charge. Deputy Barnes interviewed Clark on June 4, 2005. After waiving his *Miranda* rights,[3] Clark spoke to Deputy Barnes. Clark provided a written statement, which Deputy Barnes testified summarized the interview. The statement reads (Doc. 15-2 Ex. 11 at 102):

> [Redacted] accused me of touching them in a wrong manner [word(s) crossed out] I personally don't rember [sic] these alagations [sic], but mabye [sic] it could have happened subconeously [sic] we have all slept in the bed together myself, [the victims' mother], [redacted] . . . I think this [sic] a matter of incadental [sic] contact gone wrong. Deputy Barnes wants me to be more corapitive [sic] about this situation, and I've really told him or helped him or helped myself the best I could . . . I'm not discounting contact was made but I am dening [sic] that it was intentional and perverse.

On June 9, 2005, Detective Kathryn Poynter and Detective Kevin Cooper interviewed Clark. He initially denied touching the victims on their vaginal areas. Later during the interview, Clark stated that he never meant to harm the victims but that he recalled touching them on top of their clothing. He subsequently admitted he had put his hands down the victims' pants. Clark denied kissing D.A.'s vagina but that he might have kissed her on her panty line or "pantyliner." Clark started to cry as he made admissions and as he finished making a written statement. The written statement provides (Doc. 15-2 Ex. 11 at 104-05):

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

I never had sex with either one of these [word(s) crossed out] children! However the touching aspect was only to curb the sexual emotions or feeilings [sic] that the oldest girl [redacted] was feeling she's developing into a woman and her sexual desires were flaring up, i.e. [word(s) crossed out] she looks to me for some kind of sexual gradafacation, [sic] and my hormones allowed me to act on that and the touchig [sic] was not so much for my gradafacation [sic] but to curb the desires she had [word(s) crossed out] and during this time I touched [word(s) crossed out] them over the clothes and one thing led to another and things went farther than intended and I kissed the younger girl [redacted] on her paintie [sic] line … And again I'm sorry I didn't mean to hurt these girls at all, it was a case of the touching game gone to [sic] far, I beg that the court shows me mercy, and offers me help insted [sic] of correction witch [sic] I'll be happy to accept, and again I'm sorry for all the confusion I've called [sic].

Clark testified at trial. He denied touching the vaginal area of either girl and denied kissing D.A.'s vagina or inserting his finger in D.A.'s vagina. He stated that any touching was accidental. In testifying about his first written statement, Clark stated that Deputy Barnes wanted him to admit to something he did not do, and that he got scared and panicked when Deputy Barnes told him he was looking at a lot of time.

Clark testified that he made his second written statement during the subsequent interview with Detective Poynter because she told him he was in serious trouble but could help himself by cooperating, and that he believed he would be released if he wrote what he thought the police wanted him to admit. He testified that Deputy Poynter gave him ideas for what to write and that he cried because he was admitting to something he did not do. Clark's theory of defense was that the victims fabricated the allegations because they wanted Clark out of their home due to the troubled relationship between Clark and their mother.

## STANDARDS OF REVIEW

### I.     The AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*,

535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of Clark's postconviction claims without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II. Ineffective Assistance Of Counsel

Clark alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all

the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Clark must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Clark must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

8

## DISCUSSION

### I.  Ground One

Clark contends that trial counsel was ineffective for not subpoenaing Sandra Schulman, the nurse who examined the victims. Clark contends that Schulman would have testified that a child "can have" pain based on the penetration of a finger. (Doc. 8 at 3) He claims that this testimony would have discredited D.A., who did not indicate that she experienced any pain when Clark digitally penetrated her.

The state court summarily denied this claim (Doc. 15-9 Ex. 38 at 2) (state court's record citations omitted):

> In claim one of Defendant's September 28, 2010 Second Amended Motion, Defendant alleges counsel was ineffective for failing to call nurse Sandra Schulman as an expert witness to testify that she did a thorough examination of both victims and found no evidence of physical abuse, which allegedly would have discredited the victim's claim of penetration. In its response, the State argues that the victims' mother testified that neither girl had physical injuries and that the lead detective also testified Ms. Schulman's examination revealed no injuries. In his reply, Defendant claims Ms. Schulman's deposition testimony was that a person can have pain based on the penetration of a finger, and that this testimony would have hurt the credibility of D.A. and A.E.
>
> The Court finds that the record refutes Defendant's claims of deficient performance and prejudice. The jury was aware that no physical injuries were found on the victims. The record also shows this was a late report and that the victims were not examined immediately after the abuse occurred. Finally, D.A., the victim digitally penetrated by Defendant, did not testify at trial whether or not the penetration caused pain.

Clark does not show that the state court unreasonably denied his ineffective assistance claim. Clark does not assert that Schulman would have testified that pain would always accompany digital penetration; rather, he asserts that she would have

testified that a child "can have" pain from digital penetration. (Doc. 8 at 3) Clark fails to show that testimony that digital penetration "can cause" pain would discredit D.A. because D.A. did not testify whether or not she experienced pain due to the digital penetration. (*See* Doc. 15-17 Ex. 57 at 179-80, 190-91) Clark's assertion that Schulman's testimony would have so damaged D.A.'s credibility that there is a reasonable probability the outcome of the trial would have been different is too speculative to warrant federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's unsupported and conclusory allegations cannot sustain an ineffective assistance claim). Further, the state court noted that "[t]he jury was aware that no physical injuries were found on the victims. The record also shows this was a late report and that the victims were not examined immediately after the abuse occurred." (Doc. 15-9 Ex. 38 at 2; Doc. 15-17 Ex. 57 at 166-68; Doc. 15-19 Ex. 59 at 269; Doc. 15-20 Ex. 59 at 294) Therefore, the record was sufficient to permit the jury to reject the report if it had chosen to do so. As such, the state court did not unreasonably conclude that Clark failed to show either deficient performance or resulting prejudice.

Clark also contends that counsel's decision not to call Schulman affected his ability to confront and effectively cross-examine Detective Poynter. Clark raised a similar claim within the ground concerning counsel's failure to call Schulman in his second amended postconviction motion. (Doc. 15-6 Ex. 30 at 7) Therefore, the Court

10

concludes that Clark exhausted this aspect of his ineffective assistance claim.[4] Although not addressed with specificity in the state court's order, this Court presumes that the state court considered and denied this claim on the merits.[5] Clark does not show that the state court's decision was unreasonable.

Detective Poynter testified that although this case involved a delayed report, the victims were referred to a nurse because child victims are always examined. (Doc. 15-19 Ex. 59 at 268-69, 284) On direct examination, the State asked Detective Poynter, "[a]s part of your report were there any injuries noted to either child that were relevant to the report?" to which she answered, "[n]one that I remember, no," before testifying that she would not expect injuries in a delayed report case. (Doc. 15-19 Ex. 59 at 269)

On cross-examination, counsel asked Detective Poynter about the issue of injuries. Detective Poynter testified that an examination is conducted to look for evidence of penetration, as well as to check the overall "well-being of the child." Counsel asked (Doc. 15-19 Ex. 59 at 286):

> Q      [The prosecutor] asked you about injuries and you said that there
>        were no injuries, right?

---

[4] A habeas petitioner must exhaust his claims in state court before raising them in a § 2254 petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

[5] When a state court addresses some claims raised by a defendant, but not a claim that is later raised in a federal habeas proceeding, the federal habeas court presumes that the state court denied the claim on the merits. *Johnson v. Williams*, 568 U.S. 289 (2013). This presumption is rebuttable, and *de novo* review of such a claim is appropriate when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court[.]" *Id.* at 303. Even if the state court overlooked this claim, Clark he fails to show entitlement to federal habeas relief under *de novo* review for the same reasons addressed in this order.

A       I said that I did not recall any injuries at that time, no. No, sir, I did not.

Q       And you got a report from the nurse examiner, did you not?

A       Yes, sir.

Clark makes no allegation that the nurse's report reflects any exculpatory information inconsistent with Detective Poynter's testimony. He does not explain, therefore, how calling Schulman would have undercut Detective Poynter's credibility or provided a means to impeach Detective Poynter or rebut her testimony. Clark also claims that the failure to call Schulman meant that the jury heard about the examination through Detective Poynter's hearsay testimony, instead of hearing first-hand testimony from Schulman. To the extent that Clark might intend to argue that Schulman would have provided more definitive testimony that there was in fact no injury, he fails to show that counsel was ineffective in not calling Schulman.

The victims did not testify that they were injured, and injury was not a contested matter in this case; indeed, the State conceded that "there is not physical evidence in this case." (Doc. 15-21 Ex. 59 at 368) Detective Poynter testified that she would not expect injury in a delayed report case and her testimony suggested that no injuries were observed. In addition, as the state court noted, the victims' mother testified that they suffered no physical injury. (Doc. 15-17 Ex. 57 at 168) In that regard, Schulman's testimony would have been cumulative to Detective Poynter's testimony. Additionally, Clark does not show any violation of his rights to confront the State's witnesses due to counsel's decision not to call Schulman. Clark fails to show that

12

counsel was ineffective in not calling Schulman. *See, e.g.*, *Johnston v. Singletary*, 162 F.3d 630, 639 (11th Cir. 1998) (finding that counsel was not ineffective for failing to present additional witnesses whose testimony would have been cumulative); *see also Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

Clark does not show that the state court's decision involved an unreasonable application of Strickland or was based on an unreasonable factual determination. As a consequence, he is not entitled to relief on Ground One.

## II.   Ground Two

Clark argues that trial counsel was ineffective for not making an adequate objection to the introduction of child hearsay statements. Clark filed a pre-trial motion in limine to exclude child hearsay statements, which the state trial court denied after a hearing. (Doc. 15-2 Ex. 12; Doc. 15-14 Ex. 56) Clark contends that counsel should have objected to the sufficiency of the trial court's factual findings. Clark argues that if counsel had made an adequate objection, the trial court would have changed its ruling, or alternatively, the matter would have been preserved for appellate review.

The court denied Clark's ineffective assistance claim (Doc. 15-9 Ex. 38 at 2-3) (state court's record citations omitted):

> In claim two of Defendant's September 28, 2010 Second Amended Motion, Defendant alleges that "counsel failed to object to the sufficiency of the specific findings made by the trial court" when the court denied his motion in limine to exclude child hearsay statements. In his July 1, 2011 motion for leave to amend, Defendant alleges that *Farinacci v. State*, 29

13

So.3d 1212 (Fla. 4th DCA 2010), prohibited the use of child hearsay in a factually similar case. In its response, the States argues it filed a Notice of Intent to Rely on Child Hearsay and, in response, defense counsel filed a Motion in Limine. The State argues that on January 12, 2007, a hearing was held at which the trial court denied Defendant's Motion in Limine and determined the child hearsay statements were admissible.

The Court finds that the record refutes Defendant's claim. Counsel's motion in limine was denied. After that, counsel—on more than one occasion—made a standing objection to the entry of the child hearsay statements. Finally, *Farinacci* is inapplicable to the facts here as *Farinacci* did not deal with admissib[ility] of child hearsay under section 90.803, Florida Statutes, as was at issue in Defendant's case. *See Farinacci*, 29 So.3d at 1214. Because the record refutes Defendant's claim of deficient performance, relief is not warranted on claim two.

Clark does not show entitlement to relief. Initially, as the state court noted, counsel filed and lost a motion in limine. Thereafter, he sought and received a standing objection to the introduction of the child hearsay statements. (Doc. 15-17 Ex. 57 at 139-40, Doc. 15-19 Ex. 59 at 236) As Clark contends, however, counsel did not frame his objections at trial as involving the sufficiency of the state court's factual findings and did not object regarding the factual findings at the conclusion of the motion in limine hearing.

But Clark has not established that counsel was ineffective for not doing so. In denying Clark's motion in limine, the state trial court made detailed factual findings and concluded that the statements demonstrated sufficient indicia of reliability. (Doc. 15-14 Ex. 56 at 120-23) *See Cabrera v. State*, 206 So.3d 768, 771 (Fla. 1st DCA 2016) ("For a child hearsay statement to be admissible at trial, the court must hold a hearing outside the presence of the jury to determine if the statement meets two reliability conditions: (1) the source of the information through which the statement was reported

14

must indicate trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability.") (internal quotation marks and citations omitted).

Whether the state court's factual findings were adequate to allow the introduction of the child hearsay statements in accord with Florida evidentiary law is a question of state law. Similarly, whether the Florida caselaw upon which Clark relied in his postconviction motion provided a valid basis to object to the trial court's ruling is a matter of state law. This Court must defer to the state court on an issue of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Accordingly, this Court defers to the state court's finding that the child hearsay statements did not have to be excluded and the state court's conclusion that a more specific objection by counsel would not have changed the outcome of the proceeding.[6] Moreover, Clark does not identify the alleged deficiency in the trial court's findings with specificity; instead, he contends had counsel "shown the court inconsistent statements by the victims D.A. and A.E., which the court apparently overlooked, the court could have reconsidered its ruling on the child hearsay statements and excluded" all hearsay concerning out-of-court statements by the victims. (Doc. 8 at 6)

Clark does not identify any inconsistent statements or cite authority supporting his contention that addressing such alleged inconsistencies would have changed the state court's analysis of the child hearsay issue under state evidentiary law. Accordingly, Clark's claim is too vague to warrant federal habeas relief. *See Tejada*, 941 F.2d at 1559; *see also Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). Clark has not established that trial counsel was ineffective for the reasons alleged.

---

[6] In addition, a petitioner generally cannot demonstrate *Strickland* prejudice from trial counsel's alleged failure to preserve a matter for review. *See Purvis v. Crosby*, 451 F.3d 734, 739 (11th Cir. 2006) (rejecting a claim that trial counsel was ineffective for not preserving an issue for appeal and stating that a "fundamental flaw in this argument is that it focuses on the outcome of the appeal, not of the trial. The Supreme Court in *Strickland* told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal." (citing *Strickland*, 466 U.S. at 694-95)).

As Clark does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his ineffective assistance claim, he is not entitled to relief on Ground Two.

## III.    Ground Three

### A.    Sub-Claim One

Clark contends that trial counsel was ineffective for failing to move to dismiss the charging information because it was based on a falsified criminal report affidavit prepared by Detective Poynter. Clark contends that Detective Poynter "stat[ed] her own version of events of what [Clark] told her," including that he admitted guilt, in order to allege facts establishing probable cause. (Doc. 8 at 8) Clark thus contends that the criminal report affidavit was insufficient to establish probable cause for his arrest.

The criminal report affidavit states (Doc. 15-1 Ex. 3):

Between 01/01/05 and 06/03/05 the Defendant, while living with the juvenile victims and their mother at [redacted] within Hillsborough County, rubbed his hands on the outside clothing of the vaginal areas of both victims. The suspect then made union with his fingers to the vaginal area of both victims, by placing his hands under the victims' clothing. The suspect then made union with his lips to the youngest victim's (V-1) vaginal area. After Miranda was read and signed by the suspect Christopher Clark, he admitted guilt.

The suspect was the boyfriend of the victims' mother and lived with them as a family unit. The suspect is known to the victims as Christopher Clark.

The state court denied Clark's ineffective assistance claim (Doc. 15-9 Ex. 38 at 3) (state court's record citations omitted):

In claim three of Defendant's September 28, 2010 Second Amended Motion, Defendant alleges counsel was ineffective for failing to move to

dismiss the Information because it was based on a falsified criminal report affidavit (CRA) where Defendant claims he did not make the statements Detective Katherine Ann Poynter[ ] included in the report. In its response, the State argues that Defendant did not make just one statement, but that Defendant's admissions are included in numerous oral and written statements and that based on Defendant's numerous statements it is clear that the CRA was not based on false information. In his reply, Defendant claims that he did not make statements that he touched the victims under their clothing.

After reviewing the allegations, the court file and the record, the Court that [sic] Detective Poynter testified consistently with the information contained in the CRA, and that the testimony of Detective Poynter, Deputy Ronald Barnes, and Defendant further refutes Defendant's claims of deficient performance or prejudice. As such, no relief is warranted on claim three.

Clark has not demonstrated that the state court's denial of his claim was unreasonable. As the state court noted, the record indicates that Clark made several incriminating statements admitting to touching the victims. Those incriminating statements, along with D.A.'s and A.E.'s statements to police about the incidents, supported probable cause for Clark's arrest. Clark contends that Detective Poynter falsely stated in the report that he admitted guilt. Although Clark did not admit contact[7] between his mouth and D.A.'s vagina, his second written statement admitted to kissing D.A. on the panty line. Clark does not show sufficient inconsistency between his statement and the criminal report affidavit's indication that he admitted to kissing D.A.'s vaginal "area." Thus, counsel had no viable basis to move to dismiss the charging information as based on a falsified criminal report affidavit. While Clark

---

[7] An element of the offense of capital sexual battery was "union" between Clark's mouth and D.A.'s vagina. *See* § 794.011(2)(a), Fla. Stat. " 'Union' means contact." Fla. Std. Jury Instr. (Crim.) 11.1.

contends he did not tell Detective Poynter that he admitted to placing his hands down the victims' pants, she testified that he admitted doing so. (Doc. 15-19 Ex. 59 at 274) Clark's self-serving assertion to the contrary does not establish that the criminal report affidavit was falsified. Accordingly, the record supports the state court's determination that Clark failed to show either deficient performance by counsel in not moving to dismiss the charging information or resulting prejudice.

Clark does not establish that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Clark is not entitled to relief on Ground Three, Sub-Claim One.

## B.    Sub-Claim Two

Clark brings two allegations of ineffective assistance with respect to his mental health. First, Clark argues that trial counsel was ineffective for failing to investigate his mental health because it would have supported a defense to the charges. The state court summarily denied this aspect of Clark's claim (Doc. 15-9 Ex. 38 at 4) (state court's record citations omitted):

> After reviewing the allegations, the court file and the record, the Court finds that Defendant has not established prejudice or deficient performance as to his "mental impairment defense" where Defendant has never alleged he was insane at the time of the crimes, where the record would refute such a claim if it had been alleged, and where Defendant denied committing the crimes. [*S*]*ee Gutierrez v. State*, 860 So.2d 1043, 1045 (Fla. 5th DCA 2003). Accordingly, Defendant is not entitled to relief on his "mental impairment defense" allegation in claim four.

Clark does not show that the state court unreasonably denied his claim. As the state court noted, Clark did not allege or establish that he was insane at the time of the

offenses. *See* § 775.027(1), Fla. Stat. ("It is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane.").

Further, the state court's order points out that even if counsel could potentially have based a defense upon insanity or his mental health, such a defense would necessarily involve an admission to committing the acts alleged. But Clark maintained at trial that he did not commit the offenses. Clark does not show that counsel was ineffective in failing to pursue a defense that was inconsistent with the primary defense presented—that the victims fabricated the charges in order to remove Clark from their home because of the discord between him and their mother. *See Mirzayance*, 556 U.S. at 123, 127 ("[The Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); *Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000) ("Counsel is not required to present every nonfrivolous defense. . . . Considering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."); *Johnson v. Alabama*, 256 F.3d 1156, 1181 (11th Cir. 2001) (explaining that, while alternative defenses may be raised, "competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury.") (citation omitted).

Clark does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this portion of Ground Four.

Second, Clark asserts that trial counsel was ineffective for not investigating his mental health history by obtaining reports of experts who treated him at a crisis center "for his inability to cope with society [sic] norms" and for not seeking a competency hearing. (Doc. 8 at 10)

The state postconviction court held an evidentiary hearing on this claim. Clark testified that counsel did not ask him about his biographical background or his mental health history. (Doc. 15-22 Ex 62 at 52-54) Clark also called Dr. Richard Carpenter. Dr. Carpenter reviewed documentation from Clark's 2005 Baker Act commitment.[8] (Doc. 15-22 Ex. 64 at 6) Dr. Carpenter also conducted a clinical forensic interview with Clark on March 31, 2015, after the state court granted the postconviction evidentiary hearing. (Doc. 15-22 Ex. 64 at 6) Dr. Carpenter testified that when Clark was committed under the Baker Act, he was diagnosed with adjustment disorder with depressed mood and alcohol abuse and that the report from that commitment noted Clark's suicidal intent and suicidal ideation. (Doc. 15-22 Ex. 64 at 7) In the 2015 interview, Clark outlined his 2005 commitment and his being depressed and suicidal at that time. (Doc. 15-22 Ex. 64 at 8) Dr. Carpenter testified that Clark self-reported that his childhood involved molestation, physical abuse, neglect, and involvement in foster care. (Doc. 15-22 Ex. 64 at 13) Dr. Carpenter diagnosed Clark as having "major

---

[8] *See Doe v. State*, 217 So.3d 1020, 1024 (Fla. 2017) (explaining that § 394.467, Fla. Stat., "also known as the Baker Act, governs the involuntary inpatient placement of persons with mental illness.").

depressive disorder and post-traumatic stress disorder secondary to sexual abuse." (Doc. 15-22 Ex. 64 at 9)

Dr. Carpenter opined that an evaluation for competency to proceed would have been warranted and that such an evaluation was also appropriate regarding mitigation for sentencing. (Doc. 15-22 Ex. 64 at 14-15, 22) Although Dr. Carpenter interviewed Clark about 10 years after the trial, he believed there to be a high probability that Clark's issues would have existed around the time of trial. (Doc. 15-22 Ex. 64 at 15)

Counsel testified that he talked to Clark about his mental health and knew that at one point Clark was depressed and that Clark sometimes drank excessively. (Doc. 15-22 Ex. 62 at 26) Counsel recalled a conversation addressing Clark's Baker Act commitment but that "nothing became of it." (Doc. 15-22 Ex. 62 at 26) Counsel did not know of any of Clark's mental health diagnoses and did not seek a competency evaluation. (Doc. 15-22 Ex. 62 at 26-27) Regarding mental health mitigation for sentencing purposes, counsel testified that, "[a]fter trial, it's a moot point" because the court had no discretion in sentencing Clark. (Doc. 15-22 Ex. 62 at 28)

Counsel testified that during his visits with Clark at the jail, they went over discovery documents, prepared for trial, and talked about strategies for trial. (Doc. 15-22 Ex. 62 at 10) Counsel testified that he had no concerns regarding Clark's competency. (Doc. 15-22 Ex. 62 at 10) Counsel testified that Clark had obtained a rule book and told counsel that the charging information was defective, that Clark asked counsel about a consolidated motion to dismiss filed on behalf of numerous clients of the Public Defender's Office who were charged with capital sexual battery, including

Clark,[9] and that throughout the proceedings, Clark asked questions about "various aspects of the case." (Doc. 15-22 Ex. 62 at 10-11) Counsel testified that he had no concerns at any time, including during the trial, that Clark "did not understand the judicial process; that he did not understand my role; that he did not understand the role of the court or the jury; nothing of that nature." (Doc. 15-22 Ex. 62 at 11-12)

The state court denied Clark's ineffective assistance claim. The state court detailed the evidentiary hearing testimony and stated (Doc. 15-11 Ex. 47 at 4) (emphasis in original):

> The Court finds that Defendant has not demonstrated deficient performance or prejudice. Based on [counsel's] testimony, which the Court finds credible based on his demeanor at the evidentiary hearing, Defendant never demonstrated any behavior that caused [counsel] to question Defendant's competency. Furthermore, Defendant did not present any evidence that he would have been found incompetent to proceed if counsel had requested an evaluation. The Court notes that Dr. Carpenter testified he would have had Defendant *tested* for competency, not that Defendant was incompetent at the time of his trial.

Clark has not shown that the state court unreasonably rejected his claim. The conviction of a mentally incompetent defendant violates due process. *Pate v. Robinson*, 383 U.S. 375 (1966). The standard for competency to proceed is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding

---

[9] The motion to dismiss alleged that defendants charged with capital sexual battery were denied certain procedural safeguards and constitutional protections afforded to other capital defendants in Florida, including being charged by indictment and proceeding to trial before a 12-person jury. (Doc. 15-1 Ex. 7)

of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960);[10] *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

The state court's determination that counsel's testimony was credible is a factual finding that is presumed correct. *See Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1272 (11th Cir. 2020) ("The credibility of a witness is a question of fact entitled to a presumption of correctness under AEDPA."); *Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct."); *Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact.") (citation omitted). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Clark has not made that showing.

The testimony the court accepted as credible demonstrates that counsel had no knowledge of any mental health diagnoses and Clark's behavior before and during trial gave counsel no basis to believe that Clark was incompetent to proceed. Clark has not established that, under these circumstances, counsel performed deficiently in not further investigating his mental health background or seeking a competency hearing.

---

[10] The *Dusky* standard is set out in Florida law. *See* § 916.12(1), Fla. Stat.; Fla. R. Crim. P. 3.211(a)(1).

In addition, Clark has failed to establish a reasonable probability that he would have been found incompetent. *See Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) ("In order to demonstrate prejudice from counsel's failure to investigate his competency, petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.' " (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988))). As the state court noted, Dr. Carpenter did not have an opinion as to whether Clark in fact would have been found incompetent. Indeed, Dr. Carpenter agreed that several of Clark's behaviors to which counsel testified, including looking up legal issues and asking questions about the case, suggest that Clark would have been found competent. (Doc. 15-22 Ex. 64 at 19)

In addition, Clark's Baker Act commitment in February 2005 does not necessarily establish or even tend to show he was incompetent to proceed to trial in March 2007. *See, e.g., Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (citation omitted); *Drope*, 420 U.S. at 180-81 (stating that a suicide attempt may indicate mental instability but does not necessarily signal incompetency to stand trial). Finally, as counsel noted, after Clark was found guilty of capital sexual battery, the state trial court was required to impose a mandatory overall term of life in prison. *See* § 775.082(1), Fla. Stat. (2004). Accordingly, Clark does not establish either *Strickland* prong as he must to show that trial counsel was ineffective.

25

Clark has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his ineffective assistance claim. He is not entitled to relief on Ground Three, Sub-Claim Two.

### C.      Sub-Claim Three

Clark argues that trial counsel was ineffective for misadvising him about the elements of sexual battery. Clark claims that counsel misadvised him that the State had to prove he injured D.A.'s sexual organs. Clark asserts that counsel's alleged misadvice "was not only inaccurate information and misleading, but prohibited the defendant from presenting an effective defense." (Doc. 8 at 14)

Clark was charged with one count of sexual battery of D.A. under § 794.011(2), Fla. Stat, a capital felony. (Doc. 15-1 Ex. 6) Subsection (2)(a) of § 794.011 sets out two ways in which the offense of capital sexual battery can occur (emphasis added):

> A person 18 years of age or older who commits sexual battery upon, **or in an attempt to commit sexual battery injures the sexual organs of**, a person less than 12 years of age commits a capital felony[.]

Clark was not charged with injuring the sexual organs of D.A. while attempting to sexually batter her; rather, he was charged with committing sexual battery upon D.A. "by penetration of and/or union with the vagina of D.A. by the mouth of" Clark. (Doc. 15-1 Ex. 6) Thus, the State did not have to prove injury to obtain a conviction.

The state court held an evidentiary hearing on Clark's claim. Clark acknowledged that injury was not alleged in the charging information. (Doc. 15-22 Ex. 62 at 55) Clark testified that counsel told him the elements "in the statute," so he believed injury had to be proven. (Doc. 15-22 Ex. 62 at 54-55) Clark testified that the

26

consolidated motion to dismiss that was filed on behalf of numerous clients of the Public Defender's Office and the order denying it quoted the statutory language, and that the reference confused him and he thought injury was a main issue. (Doc. 15-22 Ex. 62 at 54-55) Clark also testified that he assumed the fact that the victims were examined by a doctor indicated an injury. (Doc. 15-22 Ex. 62 at 56) However, Clark agreed that he never discussed "the issue of injury" with counsel. (Doc. 15-22 Ex. 62 at 56)

Counsel testified that at the time of Clark's trial, he had worked in the sex offenses division of the Public Defender's Office for nearly four years and that he knew that injury was not an element of sexual battery as charged. (Doc. 15-22 Ex. 62 at 13) Counsel testified that he "never would have told [Clark]" that injury was an element and that his notes and file contain no indication that he made such a representation to Clark. (Doc. 15-22 Ex. 62 at 14) Counsel agreed that it was possible the order denying the motion to dismiss could have confused Clark, but he testified that he and Clark went over the case and the elements of the offense. (Doc. 15-22 Ex. 62 at 33-34) Counsel reiterated that injury was not at issue in this case. (Doc. 15-22 Ex. 62 at 32-34)

The state court denied Clark's claim (Doc. 15-11 Ex. 47 at 5-6) (state court's record citations omitted):

> The Court finds Defendant has not demonstrated deficient performance. First, Defendant testified that he understand [sic] the Felony Information did not charge him with injury. The record supports this testimony. Next, Defendant testified that his belief as to the injury element arose from the Motion to Dismiss and that he did not discuss the issue of injury with

27

counsel. Finally, [counsel] testified neither his notes nor his file reflected that he advised Defendant the State would have to prove injury. As noted above, the Court finds [counsel's] testimony credible based on his demeanor at the hearing. Thus, based on the cited testimony, the Court finds Defendant has not met his burden of demonstrating deficient performance as he has not established counsel misadvised him that the State would have to prove injury or that counsel prepared a defense based on such advice. The Court notes that Defendant acknowledges in his motion that "counsel never implemented his claimed strategy", and the record supports his contention that such a defense was not presented. Accordingly, relief is not warranted on claim five.

Clark does not show entitlement to relief. Clark does not rebut the presumption of correctness afforded to the state court's factual finding that counsel's evidentiary hearing testimony was credible. *See Jenkins*, 963 F.3d at 1272; *Rolling*, 438 F.3d at 1301; *Consalvo*, 664 F.3d at 845. As addressed, counsel testified that he knew injury was not an element of the charge and he would not have told Clark that it was. Based on that testimony, counsel did not misadvise Clark that injury was an element of the charged offenses. Further, as the state court noted, counsel did not raise a defense at trial based on a lack of injury. Accordingly, Clark has not shown that counsel performed deficiently or that he suffered resulting prejudice.

Clark has not shown that the state court unreasonably applied *Strickland* in denying his claim. Nor has he established that the state court's ruling was based on an unreasonable factual determination. Accordingly, Clark is not entitled to relief on Ground Three, Sub-Claim Three.

## D.    Sub-Claim Four

Clark contends that trial counsel was ineffective for failing to sufficiently argue his motion to suppress statements to law enforcement. Clark asserts that counsel

should have argued that his Sixth Amendment right to counsel "had already attached prior to law enforcement's interview of the Defendant" without counsel present. (Doc. 8 at 14)

The state court denied Clark's claim (Doc. 15-5 Ex. 29 at 7-8):

In claim six, Defendant alleges counsel was ineffective for failing to argue that Defendant's incriminating statements should have been suppressed because police violated his Sixth Amendment right to counsel. Specifically, Defendant alleges the public Defendant [sic] was appointed to represent him on June 5, 2005 at his first appearance for failure to appear on a domestic violence charge in a separate case. Defendant states his right to counsel "attached" at that time. Defendant then states detectives questioned him four days later regarding the charges in the present case, and this violated his Sixth Amendment right to counsel. Defendant asserts counsel should have argued this ground in the motion to suppress his statements because it was clear Defendant wanted his appointed counsel present for questioning. After reviewing Defendant's allegations, it is clear Defendant's claim is based on a misconception of the Sixth Amendment right to counsel.

As noted by the United States Supreme Court in *McNeil v. Wisconsin*, 501 U.S. 171, 180-81 (1991), "[t]he Sixth Amendment right to counsel attaches at the first formal proceeding against an accused . . . ." Therefore, the Sixth Amendment right to counsel attaches at the earliest of the formal charge, preliminary hearing, indictment, information, or arraignment. *See Smith v. State*, 699 So.2d 629, 638 (Fla. 1997). However, this right is offense specific, which means, "[w]hile an accused may not be interrogated about the offense for which he has Sixth Amendment counsel, he may be questioned about offenses for which the Sixth Amendment right has not attached." *See Gore v. State*, 599 So.2d 978 (Fla. 1992) (internal citation omitted).

Although Defendant's right to counsel may have attached in his domestic battery case, Defendant's right to counsel in the current case (05-CF-011343) attached on June 28, 2005—the date the information was filed. Therefore, the interview and statement he gave to Detective Poynter, which Defendant states occurred on June 9, 2005, occurred before Defendant's Sixth Amendment right to counsel attached in this case. As such, counsel did not have a good faith legal basis to argue that Defendant's June 9, 2005 statement be excluded because Detective

Poynter violated Defendant's Sixth Amendment right to counsel. Therefore, the Court finds Defendant cannot demonstrate deficient performance or prejudice. *See Strickland*, 466 U.S. at 686-87. Therefore, claim six is denied.

Clark does not demonstrate entitlement to relief. He states that his first appearance on June 5, 2005, concerned his failure to appear for a domestic violence charge. (Doc. 8 at 14-15) As the state court's order notes, Clark was not charged in the sexual battery case until after his police interviews. (Doc. 15-1 Ex. 4) The state court discussed controlling Supreme Court authority providing "that [t]he Sixth Amendment right [to counsel] is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). In addressing *McNeil v. Wisconsin*, the Eleventh Circuit further explained in *Philmore v. McNeil*, 575 F.3d 1251, 1258 (11th Cir. 2009) (emphasis in original):

> This rule enforces the purpose of the Sixth Amendment counsel guarantee, which is to protect a suspect "*after* the adverse positions of government and defendant have solidified with respect to a particular alleged crime." *McNeil*, 501 U.S. at 177-78, 111 S.Ct. at 2208-09 (quotation marks and citation omitted). Accordingly, the Supreme Court held in *McNeil* that the Sixth Amendment right to counsel "poses no bar to the admission of the statements" made in connection to offenses for which the suspect had not been charged, despite the attachment of the Sixth Amendment right on unrelated charged offenses. *Id*. at 176, 111 S.Ct. at 2208.

Based on this controlling authority and the timing of the police interviews before Clark was charged with the sexual offenses, Clark fails to show that the state court's denial of his ineffective assistance of trial counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law. Nor does he show that

the state court's decision was based on an unreasonable factual determination. Clark

is not entitled to relief on Ground Three, Sub-Claim Four.

## IV.    Ground Four

### A.    Sub-Claim One

Clark argues that trial counsel was ineffective for failing to move to dismiss the

charge of sexual battery on the basis that the charge was not supported by the evidence.

Alternatively, Clark argues, trial counsel was ineffective for not objecting to the use of

Clark's statements at trial by "arguing the danger of unfair prejudice, confusion of

issues, and misleading the jury." (Doc. 8 at 18)

Regarding his assertion that the charge of sexual battery was not supported by

the evidence, Clark argues that the victim's statements and his statements "were not

indicative that a sexual battery was committed." (Doc. 8 at 18) The state court rejected

Clark's claim (Doc. 15-9 Ex. 38 at 5) (state court's record citations and footnotes

omitted):

> Defendant alleges counsel was ineffective for failing to move to dismiss
> the sexual battery charge where neither Defendant's nor the victim's
> statements support a charge of sexual battery. In its response, the State
> asserts that three witnesses testified[11] that Defendant's mouth had made
> union with the victim's vagina. After reviewing the allegations, the court
> file and the record, the Court finds the record refutes Defendant's claim
> of prejudice.

By finding that Clark failed to show prejudice, the state court concluded that a

motion to dismiss on the basis proposed by Clark would have failed. As Clark

---

[11] The State argued that these witnesses were victim D.A., as well as the victims' mother and
Deputy Barnes by way of the hearsay statements of D.A. (Doc. 15-9 Ex. 33 at 8)

recognizes in his memorandum, a motion to dismiss a criminal charge for lack of evidence is governed by Florida Rule of Criminal Procedure 3.190. Specifically, under Rule 3.190(c)(4), a defendant may file a motion to dismiss an information or indictment on grounds that "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." In reviewing a Rule 3.190(c)(4) motion to dismiss, a trial court may not make factual determinations, weigh conflicting evidence, or consider the credibility of witnesses. *State v. Ortiz*, 766 So.2d 1137, 1142 (2000). Denial of a motion to dismiss is required if a material fact is in dispute. *State v. Kalogeropolous*, 758 So.2d 110, 112 (Fla. 2000). To defeat a motion to dismiss, the State "need only specifically dispute a material fact alleged by the defendant or add additional material facts that meet the minimal requirement of a prima facie case." *Id*. Further, on a motion to dismiss, the State is "entitled to the most favorable construction of the evidence with all inferences being resolved against the defendant." *Ortiz*, 766 So.2d at 1142.

Whether a motion to dismiss would have succeeded under this standard is a question of state law, and the state court has determined that a motion would have failed. This Court must defer to the state court's application of Florida law. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932. Clark has not shown that the state court unreasonably applied *Strickland* or unreasonably denied the facts in denying his claim.

The state court also denied Clark's claim that counsel was ineffective for not objecting to the introduction of his statements at trial (Doc. 15-9 Ex. 38 at 5-6) (state court's record citation omitted):

> Defendant alleges counsel was ineffective for failing to move to suppress
> Defendant's confession under section 90.403, Florida Statutes,
> because his admissions were not relevant to the sexual battery charge, caused
> unfair prejudice to the sexual battery charge, confused the issues, and
> misled the jury. In its response, the State argues that counsel did file a
> motion to suppress the confession, that a full hearing was conducted on
> January 12, 2007, and that the Court denied the Defendant's motion.
> After reviewing the allegations, the court file and the record, the Court
> finds counsel did file a motion to suppress and it was denied. The Court
> notes that the sexual battery charge was tried with the other charges;
> therefore, Defendant's statements were relevant. . . . As to claim eight,
> Defendant is not entitled to relief.

Clark does not show entitlement to relief. As an initial matter, as the state court noted, counsel filed a pre-trial motion to suppress Clark's statements to police. (Doc. 13-1 Ex. 10) The motion alleged that Clark's statements were taken in violation of his state and federal constitutional rights because he did not knowingly and voluntarily waive his constitutional right to remain silent, police denied his request for an attorney, and police did not adequately inform him of his right to counsel during questioning. (Doc. 13-1 Ex. 10 at 2-7)

Clark is not entitled to relief on his claim that counsel was ineffective in not seeking suppression of his statements under § 90.403, Fla. Stat. That statute provides that relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. This ineffective assistance claim also depends upon the application of Florida law. The state court identified this claim, determined that the statements were relevant, and found that counsel did not perform deficiently. By rejecting Clark's claim, the state court determined that no

meritorious basis existed to move to suppress the statements under § 90.403, Fla. Stat. This Court must defer to the state court's interpretation and application of state law in considering Clark's ineffective assistance of trial counsel claim. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932. Clark has not demonstrated that the state court unreasonably applied *Strickland* in denying his claim or based its decision on an unreasonable factual determination. Clark is not entitled to relief on Ground Four, Sub-Claim One.

## B.   Sub-Claim Two

Clark argues that trial counsel was ineffective for not moving the trial court to sever the sexual battery count from the lewd or lascivious molestation counts for trial. He claims that severance was appropriate "to promote a fair determination of Defendant's guilt or innocence." (Doc. 8 at 19)

The state court held an evidentiary hearing on Clark's claim. Clark testified that he had no recollection of discussing a motion to sever with counsel. (Doc. 15-22 Ex. 62 at 57-58) Clark testified that at the time of trial, he did not understand severance or the State's ability to introduce similar fact evidence, often referred to as *Williams* rule evidence. (Doc. 15-22 Ex. 62 at 57-58)[12]

Counsel testified that he and Clark discussed moving to sever the counts but decided not to do so. (Doc. 15-22 Ex. 62 at 14-15) Counsel testified that he concluded

---

[12] *See Newby v. State*, 272 So.3d 862, 869 (Fla. 2d DCA 2019) (explaining that "the *Williams* rule, which was first codified at section 90.404(2), Florida Statutes (1976), allows the State to introduce similar fact evidence of other crimes or acts by the defendant to prove a relevant matter in the prosecution of the crimes for which he or she is on trial.") (citation omitted).

it was preferable to face all charges at one trial. Counsel believed that even if the counts were severed, the jury would hear *Williams* rule evidence of the other allegations at each trial. (Doc. 15-22 Ex. 62 at 37) Counsel testified that he wanted to avoid the introduction of such evidence. (Doc. 15-22 Ex. 62 at 37) Counsel explained that he believed it was better for the jury to know of all allegations at the outset of the trial instead of being surprised by learning of the additional allegations through *Williams* rule evidence during trial. (Doc. 15-22 Ex. 62 at 37-38)

Counsel testified that he "thought it looked better just to attack [the victims] both saying that this is something that they concocted because they wanted Clark out of the home." (Doc. 15-22 Ex. 62 at 16) He thought that if the counts were severed, that defense would be more difficult and severance would have given the State a second opportunity to convict Clark in the event there was an acquittal on the first trial. (Doc. 15-22 Ex. 62 at 16-17) Counsel testified that a severance would be further complicated by the fact that Clark's statements to police referred to both victims and the charging dates overlapped. (Doc. 15-22 Ex. 62 at 17-18)

The state court denied Clark's claim (Doc. 15-11 Ex. 47 at 7-8) (state court's record citation omitted):

> The Court finds [counsel's] testimony more credible than Defendant's testimony based on their demeanors at the hearing and because [counsel's] testimony is consistent with the record. Specifically, the record reflects that part of the defense's argument at trial was that the victims created a story because they did not want Defendant in their house. The Court finds this portion of the trial transcript is consistent with and supports [counsel's] testimony that he opted to present this argument rather than move to sever the counts. Thus, based on [counsel's] testimony, the Court finds counsel discussed severance with

35

Defendant, ultimately, a strategic decision was made not to sever the charges. Counsel cannot be found ineffective for making a strategic decision. *See Penn v. State*, 825 So.2d 456, 458 (Fla. 2d DCA 2002) ("Counsel's strategic decisions are not to be second-guessed on collateral attack."). Furthermore, the Court finds the record supports [counsel's] recollection that the charging dates overlapped. Specifically, counts one and two were alleged to have occurred between December 14, 2003 and June 3, 2005, and count three was alleged to have occurred between July 1, 2004 and June 3, 2005.

[ ] Defendant argues that severance was appropriate and, citing to *Shermer v. State*, 935 So.2d 74 (Fla. 4th DCA 2006), asserts "the law does not allow a back door failure to sever due to Williams Rule." However, the Court finds *Shermer* is not a postconviction appeal and does not involve a strategic decision as to trial strategy. Thus, the Court is not persuaded that counsel acted deficiently for failing to move to sever the charges.

Clark does not show entitlement to relief. Clark has not rebutted, by clear and convincing evidence, the presumption of correctness afforded to the state court's factual finding that counsel's testimony was credible. *See Jenkins*, 963 F.3d at 1272; *Rolling*, 438 F.3d at 1301; *Consalvo*, 664 F.3d at 845.

The state court's finding that counsel's decision was strategic is also a finding of fact that is presumed correct unless rebutted by clear and convincing evidence. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))); *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (stating that a question "regarding whether an attorney's decision is 'strategic' or

'tactical' is a question of fact."). Clark does not present clear and convincing evidence to rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

Further, Clark does not show that counsel's strategic decision was so "patently unreasonable" as to amount to ineffective assistance. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect.") (quotation omitted); *see also Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.") (emphasis in original); *Chandler*, 218 F.3d at 1315 ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

Clark does not show that counsel's strategic decision to forgo a severance motion, as explained in his evidentiary hearing testimony, was patently unreasonable. To the extent that Clark argues that Florida caselaw supported severance of the counts based on a state evidentiary issue, this Court must defer to the state court's application of that state law to Clark's ineffective assistance claim. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932.

As Clark does not meet his burden of showing that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Four, Sub-Claim Two.

### C.    Sub-Claim Three

Clark asserts that trial counsel was ineffective for failing to investigate and secure the deposition of Detective Cooper, who was present with Detective Poynter during the June 9, 2005, interview at the jail. Clark claims that counsel's failure prevented him from impeaching Detective Poynter "with information demonstrating that testifying detective was not credible, thus prohibiting Defendant from effectively cross-examining detective." (Doc. 8 at 20)

At the state court evidentiary hearing, Clark testified that he informed counsel that he did not make the statements Detective Poynter attributed to him and that he told counsel he could ask Detective Cooper about it because Detective Cooper was there. (Doc. 15-22 Ex. 62 at 59) Clark also testified that Detective Cooper's testimony would have been relevant to whether Clark was coerced into making a statement as he claimed. (Doc. 15-22 Ex. 62 at 60)

Counsel testified that he had no information that Detective Cooper would have contradicted Detective Poynter's testimony. (Doc. 15-22 Ex. 62 at 19-20) Counsel testified that he would have called Detective Cooper if he had such information. (Doc. 15-22 Ex. 62 at 20-21)

The state court denied Clark's claim (Doc. 15-11 Ex. 47 at 9):

The Court finds Defendant has not met his burden of proof. In particular, Defendant has not proven what Detective Cooper would have testified to during a deposition or that his testimony would have resulted in a different outcome at trial. Furthermore, [counsel's] testimony, which the Court finds to be credible based on his demeanor at the hearing, was that he was not aware Detective Cooper would have contradicted Detective Poynter. As such, the Court finds Defendant has not demonstrated counsel acted deficiently in failing to depose Detective Cooper or that counsel's failure to depose Detective Cooper affected the outcome of the trial.

Clark does not show entitlement to relief. As an initial matter, he fails to rebut the presumption of correctness afforded to the state court's factual finding that counsel's testimony was credible. *See Jenkins*, 963 F.3d at 1272; *Rolling*, 438 F.3d at 1301; *Consalvo*, 664 F.3d at 845. The testimony accepted as credible reflects that, in contrast to what Clark claimed, counsel was not aware that Detective Cooper might potentially contradict Detective Poynter's testimony.

Moreover, Clark's claim is too speculative to warrant federal habeas relief because, as the state court noted, Clark has not come forward with any evidence of Detective Cooper's prospective testimony. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.' " (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985))); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)[13] ("[C]omplaints of uncalled witnesses are not favored, because the presentation of

---

[13] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."); *Small v. Fla. Dep't of Corr.*, 470 F. App'x 808, 812 (11th Cir. 2012)[14] (finding that a federal habeas petitioner failed to establish a claim under *Strickland* when he did not show, "beyond his own conclusory statements, . . . . that [the prospective witness] would have favorably testified.").

Clark has not shown that the state court's application of *Strickland* was unreasonable. Nor has he shown that the state court's ruling was based on an unreasonable factual determination. Accordingly, Clark is not entitled to relief on Ground Four, Sub-Claim Three.

### D.      Sub-Claim Four

Clark contends that trial counsel was ineffective when, at the hearing on the motion to suppress Clark's statements, counsel did not argue the second ground in the written motion to suppress. In that ground, Clark alleged that the *Miranda* warnings did not adequately inform him of his right to an attorney during questioning by police. Clark claims that counsel's failure left the issue unpreserved for appeal.

Clark appears to assert that counsel should have argued that the warnings were inadequate to inform him of his right to counsel both before and during questioning. In his second amended postconviction motion, Clark argued that counsel should have verbally argued ground two of the suppression motion. (*See* Doc. 15-6 Ex. 30 at 29 ("It is specifically the Defendant's claim that counsel was ineffective for not presenting all

---

[14] Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority. 11th Cir. Rule 36-2.

said grounds of Defendant's motion to suppress to the court.")) Thus, Clark has exhausted this ineffective assistance claim to the extent it concerns the right to counsel during questioning.

It is less clear that Clark exhausted the other aspect of his claim, that counsel should have argued about the adequacy of the warnings regarding to the right to counsel before questioning.[15] However, the Court notes that both the motion to suppress and Clark's second amended postconviction motion assert that controlling authority recognizes the importance of informing a suspect of the right to counsel both before and during questioning. (Doc. 15-1 Ex. 10 at 5-6, Doc. 15-6 Ex. 30 at 29) Accordingly, the Court will proceed as if this aspect of the claim is exhausted.

The consent to be interviewed form that Clark signed on June 4, 2005, states (Doc. 15-2 Ex. 11 at 100):[16]

> 1. I have the right to remain silent and can invoke this right at any time during questioning.
>
> 2. If I do make a statement, it can and will be used against me in a court of law;

---

[15] The state court record reflects some confusion in the state court proceedings about the exact claim raised by Clark. The motion to suppress argued that Clark was not adequately informed of his right to counsel during questioning. (Doc. 15-1 Ex. 10 at 5-7) On direct appeal, appellate counsel argued that the state court erred in admitting the statements because he was not informed of his right to counsel before questioning. (Doc. 15-2 Ex. 18) In his second amended postconviction motion, the crux of Clark's argument concerned the right to counsel during questioning. (Doc. 15-6 Ex. 30 at 28-30) Accordingly, the state postconviction court's order only expressly addressed his argument about the right to counsel during questioning. (Doc. 15-9 Ex. 38 at 7)

[16] Clark signed this form on June 4, 2005, the date of his interview with Deputy Barnes. Detective Poynter testified at the suppression hearing that before she interviewed Clark she showed him the form and asked if he remembered signing it and if he knew his rights, and that he said he did. (Doc. 15-13 Ex. 56 at 26)

3. I have the right to the presence of an attorney during questioning;

4. If I cannot afford an attorney, one will be appointed to me without charge before any questioning if that is my desire;

5. If I wish to make any statement, I may invoke my right to an attorney or to remain silent at any time during the questioning.

The state postconviction court addressed the claim that counsel was deficient for not arguing at the suppression hearing that Clark was not adequately informed of his right to counsel during questioning (Doc. 15-9 Ex. 38 at 7) (emphasis in original) (state court's record citation omitted):

> Defendant alleges counsel was ineffective for failing to argue ground two of his Motion to Suppress Statements at the suppression hearing—namely, counsel did not argue that the *Miranda* warning read to Defendant failed to warn Defendant of his right to counsel *during* the police interrogation. In its response, the State asserts counsel conducted a full motion to suppress hearing on January 12, 2007, and although counsel may not have orally argued ground two, that motion had been filed and reviewed by the Court prior to the motion hearing and the Court rejected all of the bases for the [sic] and ruled the confessions were admissible.

> After reviewing the allegations, the court file and the record, the Court finds counsel filed a written motion to suppress, that the motion [w]as denied after a hearing, and that the judge specifically found that "[a]t no point did the defendant request the assistance of an attorney." Furthermore, Defendant cannot show prejudice. *See Powell v. State*, 66 So.3d 905 (Fla. 2011). As such, no relief is warranted on claim eleven.

Clark fails to show that the state court unreasonably denied his claim. *Miranda* holds that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against

self-incrimination." 384 U.S. at 444. Prior to questioning, police must inform a suspect that he has the right to remain silent, any statement can be used as evidence against him, and he has the right to have a retained or appointed attorney present. *Id.* at 444-45. *Miranda* requires "that the suspect be informed . . . that he has the right to an attorney before and during questioning[.]" *Duckworth v. Eagan*, 492 U.S. 195, 204 (1989).

*Miranda* does not require that police provide the necessary warnings through any particular words. *See id.* at 202, 203 (stating that the Supreme Court has "never insisted that *Miranda* warnings be given in the exact form described in that decision" and that "[r]eviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement"); *California v. Prysock*, 453 U.S. 355, 359 (1981) ("This Court has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given to a criminal defendant"). Therefore, the question in reviewing the adequacy of warnings given by police is "simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.' " *Duckworth*, 492 U.S. at 203 (quoting *Prysock*, 453 U.S. at 361).

The warnings unambiguously stated that Clark had the right to counsel during questioning. Clark does not argue what else the warning about his right to counsel during questioning should have stated to comply with *Miranda* or show that counsel was ineffective for not pursuing such an argument. Nor does Clark show that counsel was ineffective in not arguing that he was not adequately informed of the right to an

attorney before questioning.[17] The warnings clearly stated that an attorney would be appointed prior to questioning if Clark desired. Clark does not argue with specificity how the warning was deficient and does not establish a meritorious basis for counsel to have argued that the warning failed to convey his right to an attorney prior to police questioning. Therefore, he has not carried his burden of showing entitlement to habeas relief. *See Romine*, 253 F.3d at 1357.

Clark does not show that counsel was ineffective in not arguing about the adequacy of the warnings at the suppression hearing. Nor does he demonstrate a reasonable probability that such an argument would have changed the outcome of the proceeding. As Clark does not establish that the state court's order was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination, he is not entitled to relief on Ground Four, Sub-Claim Four.

### E.    Sub-Claim Five

Clark argues entitlement to relief based on the cumulative effect of trial counsel's alleged errors. The state postconviction court denied this claim because Clark had not established any instance of ineffective assistance. (Doc. 15-11 Ex. 47 at 9-10) Clark does not show that the state court's decision was unreasonable. *See Morris*

---

[17] Although the state court's order did not explicitly address whether counsel was ineffective with respect to the warnings about Clark's right to counsel before questioning, it is presumed to have ruled on this claim on the merits. *See Williams*, 568 U.S. 289. Even if the state court overlooked the claim and Clark is entitled to *de novo* review on federal habeas review, he is not entitled to relief for the reasons set out in this Order.

*v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that when none of the individual claims of error have merit, "we have nothing to accumulate"); *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) (stating that where no error is shown, "there can be no cumulative error."). Clark does not show that the state court's denial of cumulative error claim was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. He is not entitled to relief on Ground Four, Sub-Claim Five.

It is therefore **ORDERED** that Clark's amended petition (Doc. 7) is **DENIED**. The **CLERK** is directed to enter judgment against Clark and to **CLOSE** this case.

<u>**CERTIFICATE OF APPEALABILITY**</u>
<u>**AND**</u>
<u>**LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**</u>

**IT IS FURTHER ORDERED** that Clark is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. Section 2253(c)(2) limits the issuing of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Clark must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails

to make this showing, Clark is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Clark must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 17th day of February, 2022.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

46